UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6|14|0
```

------------------------------------

IT'S A 10, INC. and CAROLYN PLUMMER,

                 Plaintiffs,                    10 Civ. 972

     -against-                                   OPINION

PH BEAUTY LABS, INC. and FREEMAN BEAUTY,
A Division of PH BEAUTY LABS, INC.,

                 Defendants.

------------------------------------X

A P P E A R A N C E S :


          Attorneys for Plaintiffs

          TIAJOLOFF & KELLY LLP
          The Chrysler Building – 37th Floor
          405 Lexington Avenue
          New York, NY  10174
          By:  Edward P. Kelly, Esq.


          Attorneys for Defendants

          GIBNEY, ANTHONY & FLAHERTY, LLP
          665 Fifth Avenue
          New York, NY  10022
          By:  Brian W. Brokate, Esq.
               Walter-Michael Lee, Esq.

**Sweet, D.J.**

Defendants pH Beauty Labs, Inc. and Freeman Beauty, a division of pH Beauty, (collectively, "pH Beauty" or "Defendant") have moved pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Central District of California. Plaintiffs It's a 10, Inc. ("It's a 10") and Carolyn Plummer ("Plummer") (collectively, "Plaintiffs") have moved pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to amend their complaint. Upon the facts and conclusions set forth below, Defendant's motion to transfer is denied and Plaintiffs' motion for leave to amend is granted.

**Prior Proceedings**

On February 5, 2010, Plaintiffs filed this action against pH Beauty, alleging that pH Beauty sold women's hair care products that infringe Plaintiffs' trademarks and trade dress. On February 22, 2010, Plaintiffs moved for a preliminary injunction and, on April 7, 2010, a preliminary injunction upon consent was entered in which Defendant agreed to refrain from manufacturing, importing, exporting, distributing, advertising and offering for sale any infringing products during the pendency of this action.

1

Subsequently, Defendant moved to transfer the action to the Central District of California and Plaintiffs sought leave to amend the complaint to add Bed, Bath & Beyond, Inc. ("BBB") and Pathmark Stores, Inc. ("Pathmark") as defendants and to add new claims of counterfeiting under 15 U.S.C. § 1116(d) and dilution under the New York Anti-Dilution Statute, N.Y. Gen. Bus. Law. § 360-1.

The instant motion to transfer was heard and marked fully submitted on April 21, 2010.  The instant motion for leave to amend was heard and marked fully submitted on May 5, 2010.

**The Parties**

Plaintiff It's a 10 is a corporation organized under the laws of the state of Florida, with its principal place of business in Deerfield Beach, Florida.  It's a 10 is the owner of the "It's a 10" trademark and the trademarks "Miracle Hair Mask," "Miracle Shine Spray," and "Miracle Moisture Shampoo" for use in connection with hair care products.

Plaintiff Carolyn Plummer is the President and

2

Chief Executive Officer of It's a 10. She is a resident of Florida and owner of the federally-registered trademark "Miracle Leave-In Products" for use in connection with hair care products.

Defendant pH Beauty is a California corporation with its principal place of business in Los Angeles, California. Freeman Beauty is a division of pH Beauty with the same principal place of business. pH Beauty and Freeman Beauty produce and distribute women's hair care products that allegedly infringe upon the trademark and trade dress rights of Plaintiffs, including at BBB and Pathmark stores in New York City.

**Venue Is Appropriate**

A.   The § 1404 Factors

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding whether to transfer venue, courts examine (1) whether "the plaintiff could have brought the case initially in the proposed transferee forum;" and (2)

whether the transfer would "promote the convenience of
parties and witnesses and would be in the interests of
justice." Clarendon Nat'l Ins. Co. v. Pascual, No. 99 Civ.
10840, 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000)
(quoting Coker v. Bank of America, 984 F. Supp. 757, 764
(S.D.N.Y. 1997)).  Section 1404(a) is intended "to prevent
waste of time, energy and money and to protect litigants,
witnesses and [the] public against unnecessary inconvenience
and expense." MasterCard Int'l Inc. v. Lexcel Solutions,
Inc., No. 03 Civ. 7157, 2004 WL 1368299, at *5 (S.D.N.Y.
June 16, 2004) (quoting Van Dusen v. Barrack, 376 U.S. 612,
616 (1964) (internal quotation marks omitted)).  "The
conveniences should be measured at the time they are
balanced, rather than at the time of the original complaint,
since the court's primary concern is determining the
connection between the action and the forum." Employers
Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 277
n.5 (2d Cir. 2008).

         The factors that district courts in the Second
Circuit consider in determining whether one venue is more
convenient than another include:

    (1) the plaintiff's choice of forum, (2) the
    convenience of the witnesses, (3) the location of
    relevant documents and relative ease of access to
    sources of proof, (4) the convenience of the
    parties, (5) the locus of operative facts, (6) the
    availability of process to compel the attendance

of unwilling witnesses, [and] (7) the relative
means of the parties.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir.
2006) (quoting Albert Fadem Trust v. Duke Energy Corp., 214
F. Supp. 2d 341, 343 (S.D.N.Y. 2002)).  Additional factors
considered by other courts include "the forum's familiarity
with governing law" and "trial efficiency and the interest
of justice, based on the totality of the circumstances."
Glass v. S & M NuTec, LLC, 456 F. Supp. 2d 498, 501
(S.D.N.Y. 2006); Posven, C.A. v. Liberty Mut. Ins. Co., 303
F. Supp. 2d 391, 404 (S.D.N.Y. 2004).

        Finally, "[d]istrict courts have broad discretion
in making determinations of convenience under Section
1404(a) and notions of convenience and fairness are
considered on a case-by-case basis."  D.H. Blair, 462 F.3d
at 106 (citing In re Cuyahoga Equip. Corp., 980 F.2d 110,
117 (2d Cir. 1992)).

        There is no dispute that this action could have
been brought in the Central District of California.   The
appropriateness of transfer therefore depends on the
convenience of the parties and witnesses and the interests
of justice.

                            5

## B.    The Plaintiff's Choice of Forum

"[C]ourts in this circuit are loath to disturb a
plaintiff's choice of forum absent a showing that 'the
balance of convenience and justice weighs heavily in favor
of transfer.'"   Central Sports Army Club v. Arena Assocs.,
Inc., 952 F. Supp. 181, 189 (S.D.N.Y.1997) (quoting
Somerville v. Major Exploration, Inc., 576 F. Supp. 902, 908
(S.D.N.Y. 1983)); see also Lesser v. Wildwood, No. 01 Civ.
4209 (RWS), 2002 WL 1792039, at *3 (S.D.N.Y. Aug. 2, 2002);
NBA Props., Inc. v. Salvino, No. 99 Civ. 11799, 2000 WL
323257, at *9 (S.D.N.Y. Mar. 27, 2000); Laumann Mfg. Corp.
v. Castings USA, Inc., 913 F. Supp. 712, 721 (E.D.N.Y.1996).

Defendant contends that no weight should be given
to Plaintiffs' choice of forum because Plaintiffs are
located in Florida, not New York.  However, even if a
plaintiff is not a resident of its chosen forum, the choice
will be respected as long as the balance of factors does not
warrant a transfer.  See, e.g., Habrout v. City of New York,
143 F. Supp. 2d 399, 401 (S.D.N.Y.2001) ("Though the amount
of weight accorded to Plaintiff's choice of forum is reduced
when the chosen forum is neither where Plaintiff resides nor
where the events giving rise to the action occurred . . .
Plaintiff's choice of forum nevertheless should not be

6

disturbed unless the balance of factors clearly weighs in favor of a transfer."). Defendant also contends that the acts that gave rise to this action occurred in California, not New York. However, Plaintiffs allege that numerous retailers in this district — including BBB and Pathmark, which Plaintiffs seek to add to their amended complaint — are selling Defendant's infringing products. "Where there is ongoing business activity in the chosen forum . . . plaintiff's choice of forum is given 'more deference than it would if the connection to [the] forum were truly de minimis.'" Kiss My Face Corp. v. Bunting, No. 02 Civ. 2645, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003) (citation omitted).

Plaintiffs' choice of forum therefore weighs in favor of retaining jurisdiction.

## C.   The Convenience of Witnesses

Defendant identifies four key witnesses to this case who are located in California. These witnesses will testify regarding important areas of dispute, including the creation, design, manufacture and distribution of the allegedly infringing products. Plaintiffs do not identify any specific witnesses in this district, but assert that

7

witnesses from BBB and Pathmark are located in New York and
New Jersey. While this factor weighs in favor of
Defendant's request for a transfer, three of the California
witnesses identified by Defendant are party employees,
limiting concerns about the need for compulsory process.
Also, courts in this district have observed that "the
convenience of non-party witnesses is accorded more weight
than that of party witnesses." ESPN, Inc. v. Quiksilver,
Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (quoting
Indian Harbor Ins., Co. v. Factory Mut. Ins. Co., 419 F.
Supp. 2d 395, 402 (S.D.N.Y. 2005)).

This factor weighs slightly in Defendant's favor.

D.    The Location of Documents

The location of documents tends to parallel the
analysis of the convenience of witnesses and thereby weighs
in favor of Defendant. However, "[i]n today's era of
photocopying, fax machines, and Federal Express," the
location of the documents is not a significant factor in the
convenience analysis. Coker, 984 F. Supp. at 766; see also
Walker v. The Jon Renau Collection, Inc., 423 F. Supp. 2d
115, 118 n.3 (S.D.N.Y. 2005); Advanced Fiber Techs. (AFT)
Trust v. J & L Fiber Servs., Inc., No. 07-CV-1191, 2008 WL

4890377, at *4 (N.D.N.Y. Nov. 12, 2008). Furthermore,
because Plaintiffs allege that Defendant's infringing
products were distributed and sold at stores in New York,
and in light of Plaintiffs' intention to add BBB and
Pathmark as parties, not all relevant documents will be
located in the transfer forum.

This factor is neutral.

E.    The Convenience of the Parties

Defendant contends New York is not a convenient
forum for any party, because Defendant is located in
California and Plaintiffs are located in Florida, and that
since Plaintiffs do not reside in New York, transfer to
California would be more convenient for Defendant. However,
Plaintiffs chose this forum and have established that there
is a material relationship between the underlying
controversy and New York, outweighing the fact that
Plaintiffs are not located here. See Habrout, 143 F. Supp.
2d at 401. In addition, "[a] § 1404(a) motion should not be
granted if all transfer would accomplish is to shift the
inconveniences from one party to the other." Stinnes
Interoil, Inc. v. Apex Oil Co., 604 F.Supp. 978, 984
(S.D.N.Y. 1985).

Plaintiffs also seek to amend their complaint to add BBB and Pathmark, both of which are purportedly New Jersey corporations. New York is certainly more convenient to these parties than California.

The convenience to the parties is a neutral factor since California favors Defendant while New York favors Plaintiffs.

F.   Locus of Operative Facts

"In actions alleging trademark infringement or unfair competition, courts in this district have held the locus of operative facts to be in the initially chosen forum if acts of infringement, dilution, or unfair competition occur in that forum." ESPN, 581 F. Supp. 2d at 549 (quoting Kiss My Face, 2003 WL 22244587, at *3). The loci of operative events regarding the infringement at issue here are California, New Jersey, and New York. Defendant designed, manufactured, and distributed the allegedly infringing products in California. However, "an argument regarding where alleged infringing trademarks were developed, designed, marketed or sold is simply not germane in regard to the locus of operative facts." Id. Defendant

10

concedes that it shipped its products to BBB in New Jersey and that retail sales of its products occurred in New York. Ultimately, "if the allegedly infringing products are sold within the Southern District of New York, even if sold elsewhere, there exists a sufficient connection with this District." Kiss My Face, 2003 WL 22244587, at *3.

Thus, this factor weighs in favor of retaining jurisdiction here.

### G.    Availability of Compulsory Process

Three of the witnesses identified by Defendant are party employees.  As such, the availability of compulsory process with respect to those witnesses is not a consideration.  See, e.g., Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) ("[P]arties can compel the testimony of their own employees without the need for subpoena.").

The two non-party witnesses identified by Defendant are (1) CLA, Division at Alberto Culver Company ("Culver"), a third-party California corporation that acted to aid in the development of the product in question, and (2) BBB.  Plaintiff contends that Culver is under the

control of Defendant and can therefore be compelled to
testify, but Defendant asserts that Culver is a non-party.
Regardless, it is unclear whether Culver's testimony is
critical to this action, so the fact that Culver may be
outside the Court's subpoena power is not dispositive.
Plaintiffs seek to add BBB as a party, which will bring any
BBB employees within the Court's subpoena power.  Moreover,
both BBB and Pathmark have locations in New York and are
therefore subject to process in this district.

            To the extent availability of compulsory process
is a factor, it weighs slightly in Defendant's favor.


        H.    The Relative Means of the Parties

            Defendant's arguments regarding the relative means
of the parties are unavailing.  "Although courts can
consider the relative means of parties, this factor is not
entitled to great weight where plaintiff and defendant are
both corporations."  Toy Biz, Inc. v. Centuri Corp., 990 F.
Supp. 328, 331 (S.D.N.Y. 1998).  Furthermore, "[a] party
arguing for or against a transfer because of inadequate
means must offer documentation to show that transfer (or
lack thereof) would be unduly burdensome to his finances."
NBA Props., Inc. v. Salvino, Inc., No. 99 Civ. 11799, 2000

WL 323257, at *10 (S.D.N.Y. Mar. 27, 2000) (citation omitted); see also Arrow Elecs., Inc. v. Ducommun Inc., 724 F. Supp. 264, 266 (S.D.N.Y. 1989) ("While plaintiff is a substantially larger corporation, defendant has made no showing that defending this action in this District would be unduly burdensome."). Even when the plaintiff "has greater financing means to litigate [the] matter, the Court does not believe this factor can weigh in favor of one party or the other where the profits of both parties are significant." Virgin Enters. Ltd. v. American Longevity, No. 99 Civ. 9854, 2001 WL 34142402, at *10 (S.D.N.Y. Mar. 1, 2001).

Defendant has asserted that litigating this action in New York would put it "in serious jeopardy of going out of business," described Plaintiffs as a large corporation with more than $60 million in sales, and described itself as a "company struggling to compete" with Plaintiffs and others.  However, Defendant has failed to provide sufficient documentation to support any of these claims of undue burden.  To the contrary, Plaintiffs note that It's a 10 has only two employees, while pH Beauty has 15 employees.

The relative means of the parties does not appear to be a significant factor in the convenience analysis.

13

I.   <u>Trial Efficiency and the Interests of Justice</u>

The parties have consented to a preliminary
injunction, which was entered by this Court.  In the
interest of judicial efficiency and to enforce compliance
with the preliminary injunction, this factors weighs in
favor of retaining jurisdiction.

J.   <u>The Motion to Transfer is Denied</u>

With the other convenience factors being
relatively balanced, Plaintiffs' choice of forum and the
efficiency of retaining jurisdiction to enforce the
preliminary injunction weigh in favor of Plaintiffs in the
circumstances of this case.  The motion to transfer is
therefore denied.

Plaintiffs' cross-motion to compel a Rule 30(b)(6)
deposition is denied as moot.

**<u>The Motion for Leave to Amend is Granted</u>**

Rule 15(a) states that leave to amend a pleading
"shall be freely given when justice so requires."  Leave to
amend a complaint pursuant to Rule 15 should not be denied

unless there is evidence of undue delay, futility, bad faith, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-movant. See Foman v. Davis, 371 U.S. 178, 182-83 (1962); Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 125 (2d Cir. 2008); Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

In its opposition to the motion to add BBB and Pathmark, Defendant has cited bad faith, based on the contention that Plaintiffs seek to add BBB and Pathmark solely to defeat the pending transfer motion. In opposing the motion to add new claims, Defendant has cited futility. See Foman, 371 U.S. at 182.

## A.   Plaintiffs Did Not Act in Bad Faith

Plaintiffs' did not learn of Pathmark's sales of Defendant's products until after the initial complaint was filed on February 5, 2010 and decided to add BBB after BBB had failed to remove the infringing products from its shelves.  Plaintiffs' motion to amend is therefore not based on bad faith, but rather on the discovery of these new facts.  See, e.g., Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 703 (2d Cir. 1985) (observing that the purpose of

15

amending a pleading "is to assert matters that were
overlooked or were unknown at the time of the original
complaint" (internal quotations and ellipses omitted)).

### B.   The Amendment Is Not Futile

The party opposing a motion to amend bears the
burden of establishing that an amendment would be futile.
See Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134,
137-38 (E.D.N.Y. 1998) (citing Harrison v. NBD Inc., 990 F.
Supp. 179, 185 (E.D.N.Y. 1998)).  "A proposed amendment to a
pleading would be futile if it could not withstand a motion
to dismiss pursuant to Rule 12(b)(6)."  Oneida Indian Nation
of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir.
2003) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d
119, 123 (2d Cir. 1991)).  Therefore, "[f]or the purposes of
evaluating futility, the 12(b)(6) standard is applied: all
well pleaded allegations are accepted as true, and all
inferences are drawn in favor of the pleader."  E*Trade Fin.
Corp. v. Deutsche Bank AG, 420 F. Supp. 2d 273, 282
(S.D.N.Y. 2006) (citing Mills v. Polar Molecular Corp., 12
F.3d 1170, 1174 (2d Cir. 1993)).

A proposed claim is not futile if the "factual
allegations are enough to raise a right to relief above the

16

speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 433 (2007).

Defendant contends that Plaintiffs' proposed trademark counterfeiting claim, pursuant to 15 U.S.C. § 1116(d), is frivolous and baseless because Defendant's "Top 10 Miracles" is not identical with, or substantially indistinguishable from Plaintiffs' "It's a 10" trademark, nor are Defendant's other products identical with Plaintiffs' "Top 10 Miracles" mark. See 15 U.S.C. § 1127 (defining a "counterfeit" as a "spurious mark which is identical with, or substantial indistinguishable from, a registered mark"). However, Plaintiffs assert that Defendant's marks, even if not identical, are substantially indistinguishable not only in their use of identical terms, but in size, font, color, placement, and design. The modifications are trivial and intended only escape liability for counterfeiting. Accepting these allegations as true for purposes of Plaintiffs' motion to amend, the counterfeiting claim is not futile.

Defendant also contends that Plaintiffs' proposed dilution claim under the New York Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-1, is futile.

Defendant argues that the statute does not provide a remedy for dilution of trade dress.  In the Second Circuit, however, courts have held that this statute "applies with equal force to the protection of trade dress." Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 73 (2d Cir. 1994); see also Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc., 419 F. Supp. 2d 225, 232 (N.D.N.Y. 2005).

Defendant also argues that the statute only protects trademarks of "distinctive quality or which have acquired a secondary meaning" and that it does not apply to Plaintiffs' marks, which it describes as "generic." However, Plaintiff's trademarks have been federally registered, which means they cannot be "generic." Furthermore, the distinctiveness required to bring a claim under the New York Anti-Dilution Statute can be either acquired or inherent, and Plaintiffs have set forth sufficient allegations to support an inference that the marks at issue are inherently distinctive and have received significant recognition in the industry.

Finally, Defendant argues that this claim is duplicative of Plaintiffs' existing claims.  This argument

is similarly unpersuasive.  While the Lanham Act only covers
marks that are inherently distinctive, the New York statute
covers marks that inherently distinctive or that have
acquired secondary meaning.  In addition, the scope of
injunctive relief available under the Lanham Act and the New
York statute differs.

For the foregoing reasons, Plaintiff's proposed
amended complaint is not futile.

**Conclusion**

Based on the facts and conclusions set forth
above, the motion to transfer this action to the United
States District Court for the Central District of California
is denied and the motion for leave to amend is granted.

It is so ordered.

New York, NY
June /4, 2010

ROBERT W. SWEET
U.S.D.J.

19